Carl L. PARKER (Plaintiff), Respondent,

v.

SCHOOL DISTRICT OF MAPLEWOOD–
RICHMOND HEIGHTS, ST. LOUIS
COUNTY, Missouri, and George L. Doer-
baum, F. J. Bell, William H. Hellwege,
Hiram Neuwoehner, Edwin G. Brown and
Sterling Davidson, Jr., Constituting the
Present Members of the Board of Educa-
tion of the Defendant School District of
Maplewood-Richmond Heights, St. Louis
County, Missouri (Defendants), Appellants.

No. 29097.

St. Louis Court of Appeals.

Missouri.

Oct. 19, 1954.

Rehearing Denied Nov. 12, 1954.

Orlie Underwood, Maplewood, Walter Wehrle, Clayton, for appellants.

John A. Nolan, Clayton, Dearing & Matthes, Hillsboro, for respondent.

WOLFE, Commissioner.

This is an action for a declaratory judgment whereby the plaintiff seeks to establish the validity of a contract of employment as superintendent of the defendant school district. There was a finding and decree that the contract was valid and the defendants prosecute this appeal. The appeal was erroneously taken to the Supreme Court and comes to us by transfer.

The petition alleged that the plaintiff had the necessary qualifications to act as superintendent of the Maplewood-Richmond Heights School District, and that the district entered into a written contract with him in March, 1952. By the terms of the contract the plaintiff, Dr. Parker, agreed to act as superintendent and administrator of the school district for a term of three years commencing on July 1, 1952, and the board agreed to pay him in monthly installments a salary of $10,000 a year for the services he was to perform. It is further alleged that on April 10, 1952, the board addressed a letter to Dr. Parker informing him that his contract was not valid and that he was not superintendent of the Maplewood-Richmond Heights School District. On April 21, 1952, Dr. Parker brought this action.

The defendants in their answer alleged that the contract was entered into by the board when the terms of four of its members were about to expire, and that the four members fraudulently conspired with Dr. Parker in the execution of the contract of employment. It also alleged that the plaintiff lacked the necessary qualifications for the position of superintendent of the district. For these reasons it is asserted that the contract is void. The material allegations of the answer were denied by reply.

The evidence presented reveals that in February, 1951, a Mr. Adams was superintendent of the school district employed under a contract, which, by its terms, expired on June 30, 1951. The school board as it was constituted in February, 1951, passed a resolution to discharge Mr. Adams. After passing the resolution it was decided, upon advice of counsel that the board could not discharge Adams without preferring charges against him which, upon a proper hearing, would prove to be cause for dismissal. The board thereupon rescinded its previous resolution and informed the citizens by letter that there had been differences between the board and the superintendent but that any action to be taken on the matter would be left to the new board to be elected in April, 1951.

The board elected in April of 1951 reemployed Mr. Adams for a term of one year. Thereafter, on February 14, 1952, the board adopted a resolution that Mr. Adams would not be reemployed and at the same meeting two members of the board, Mr. Wightman and Mr. Hellwege, were appointed by Mr. Freeman, the president, as a selection committee to find a new superintendent for the school district. Mr. Freeman also served as a member of the selection committee. The faculty was requested by Mr. Freeman to assist in the selection and a committee of faculty members was created for this purpose. The faculty committee met and set up what they called "Criteria for evaluating applicants". These so-called criteria did not, as the word might suggest, outline any

standards by which the applicant might be judged. With the exception of an age limit they merely provided a series of subjects about which applicants should be questioned, such as his views on various matters relating to pedagogy, his experience, characteristics and interests.

There was a meeting of the American Association of School Administrators in the City of St. Louis during the latter part of February, 1952, and Mr. Wightman and Mr. Hellwege, members of the board and the selection committee, considered it advisable to take a room at the Jefferson Hotel during the school administrators meeting so that they might interview persons attending the meeting who desired to apply for the position with the Maplewood-Richmond Heights School District. This was done and telegrams were sent to ten universities close to Missouri informing them that the committee of the board of education would have a room at the hotel for the purpose of interviewing applicants. A number of applicants were interviewed and among them was the plaintiff, Dr. Parker. He came to the room for interviews on February 23 and 24.

School board director Wightman turned over a number of applications to the faculty committee and met with the committee several times. This committee interviewed some applicants and among those interviewed was Dr. Parker. On March 8 the committee informed director Wightman that Dr. Parker had been "screened out". On that same day the board held a special meeting and after interviewing Dr. Parker he was tendered a contract by the terms of which he was employed as superintendent of the district for a period of three years beginning on July 1, 1952, at a salary of $10,000 a year. One of the directors had not received a notice of this special meeting and the question of the legality of the board's action was raised; so at the regular meeting of March 13, 1952, a contract of the same terms was approved by a vote of four to two. Dr. Parker signed the contract which was duly executed by the school board.

As to the qualifications of Dr. Parker, he was a graduate of Southeastern Missouri Teachers College where he majored in education and administration. Here he received a B. S. degree. He continued his study in the field of educational administration at the University of Missouri from which he received degrees of Master of Arts and Doctor of Philosophy. His experience in the field of education consisted of serving the Marley-Bridges Consolidated High School District of Mississippi County during the school year of 1930–1931 and half of the school year of 1931–1932. The minutes of the board of that district show that he was employed as superintendent. The president of the Marley-Bridges School Board testified that Dr. Parker handled all the administrative work and purchased the necessary books and supplies for the school district. In addition to this Dr. Parker taught in the high school. Later he was Dean of Men in Nebraska State Teachers College for four years, and in the absence of the Administrative Dean he did some administrative work for the college. In 1948, he was employed as superintendent of the Flat River School District and had been continuously so engaged up to the signing of the contract with the Maplewood-Richmond Heights School District. At that time he was to terminate his employment with the Flat River School District although his contract did not expire until 1954. His resignation was accepted by the Flat River district effective as of June 30, 1952.

The defendants called as a witness Dr. Charles A. Lee, who had been State Superintendent of Schools for the state of Missouri from 1923 to 1935. He testified that Dr. Parker was the principal of the high school and not the superintendent of the Marley-Bridges Consolidated School District. There was also evidence that a group of citizens of the Maplewood-Richmond Heights School District, who were interested in having Mr. Adams retained as superintendant, were active in his behalf and opposed to the action of the board of education.

The appellants first assert that Dr. Parker did not have the necessary qualifications, under the law, to be eligible for the position of superintendent of the Maplewood-Richmond Heights School District, in that he did not have sufficient prior experience as a superintendent. Section 165.147, RSMo 1949, V.A.M.S., in part provides:

"In all counties of the first class, any school board or board of education in charge of a public school maintaining a four-year high school course, previously approved by the state board of education, and employing a superintendent devoting his full time to supervisory and administrative work, said school board or board of education is hereby authorized and empowered to employ and enter into contract with said superintendent of schools of said school district for a period of not to exceed three years; provided, said superintendent has had not less than *five years' experience as a superintendent of public schools* or has been employed in said high school district for a period of two years or more."

■ It is contended that Dr. Parker was only principal of the high school of the Marley-Bridges district and therefore the year and a half that he spent with that district cannot be credited to his experience as a superintendent. Such a contention would make it appear that the chief concern of the Legislature in passing the act was with the title held rather than the type of work done by those eligible for consideration as superintendent. The obvious intent of the Legislature in passing the act was to bring experienced persons into the work of supervision and administration. Whether or not Dr. Parker was called the principal or the superintendent is not important if his experience was that of superintendent. The minutes of the Marley-Bridges district showed that he was employed as such and the president of that board stated that the running of the school affairs was left in Dr. Parker's hands. This, with his unquestioned experience as superintendent of the Flat River School District for four years, was sufficient to qualify him for the position with the Maplewood-Richmond Heights School District. Eelkema v. Board of Education of City of Duluth, 215 Minn. 590, 11 N.W.2d 76.

■ The appellants also advance the proposition that even though qualified, since Dr. Parker was not approved by the faculty committee, the board could not employ him. They discuss the power of the board to make rules and predicate their argument on the assumption that the board had adopted a rule creating the faculty committee. The record does not support this, for the faculty committee came into existence at the request of Mr. Freeman, president of the board and chairman of the selection committee. This faculty committee was asked to assist in the selection and to co-operate with the board's committee. No rule of any kind touching upon the matter was adopted by the board and the whole responsibility for the selection of the superintendent rested upon it.

■■ Appellants urge that the contract was fraudulently entered into because the board in 1951 had decided to take no action toward removing Mr. Adams as superintendent until after the election of 1951, and that this board in 1952 employed Dr. Parker shortly prior to a school board election, giving him a three-year contract. The period of time that the contract was to be in effect is in accord with the statutes. Section 165.147 RSMo 1949, V.A.M.S., provides that a superintendent may be employed for a period of three years. The fact that the composition of the board might change prior to the expiration of this time did not affect the validity of the contract. The board had the power to contract beyond the term to which its members had been elected. In Tate v. School District No. 11 of Gentry County, 324 Mo. 477, 23 S.W.2d 1013, 1022, 70 A.L.R. 771, the court approved the following statement: "There is nothing in this grant of power to employ teachers and a superintendent which in any way limits the authority of the board of trustees to contracts that are to be perform-

864

ed during the existence of any particular organization of that body." The board consequently was acting within its authority. What had been done the year before in relation to discharging Mr. Adams had no connection with Dr. Parker's employment. The record does not disclose any fraud upon the part of the board members and certainly nothing that would remotely suggest fraud on the part of Dr. Parker.

The fact that Dr. Parker's contract with the Flat River School District had not yet expired did not prevent him from contracting with the Maplewood-Richmond Heights School District. He, of course, could not fill both positions and he obviously anticipated that he would be released by the Flat River School District. He was so released and presented himself to the Maplewood-Richmond Heights district on July 1, 1952, ready to perform his contract with them.

The appellants also contend that the facts did not present issues which could be properly and conclusively determined in an action for a declaratory judgment. Our Declaratory Judgment Act, in Section 527.-020, RSMo 1949, V.A.M.S., provides:

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

When the board notified Dr. Parker that the contract he held was void and that he had no status as superintendent of the school district under the contract, there was a controversy as to the validity of the contract and Dr. Parker had a right to have that determined under the foregoing act. This is one of the purposes of the section above quoted. Webb-Boone Paving Co. v. State Highway Commission, 351 Mo. 922, 173 S.W.2d 580; State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25; Pennsylvania Casualty Co. v. Suburban Service Bus Co., Mo.App., 211 S.W.2d 524.

From the foregoing it must be concluded that the court properly held that the contract between the parties was valid, and it is the recommendation of the Commissioner that the decree be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The decree of the circuit court is accordingly affirmed.

ANDERSON, P. J., and BENNICK, J., and WEINSTEIN, Special Judge, concur.